458 So.2d 32 (1984)
Charlotte B. KEISTER, Appellant/Cross Appellee,
v.
James V. KEISTER, Appellee/Cross Appellant, and
Lilian Maria Brown, Appellee.
Charlotte B. KEISTER, Appellant,
v.
James V. KEISTER, Appellee.
Nos. 82-1300, 83-1387.
District Court of Appeal of Florida, Fourth District.
October 17, 1984.
Rehearing Denied November 21, 1984.
*33 Harry G. Carratt of Morgan, Carratt & O'Connor, P.A., Fort Lauderdale, for Charlotte B. Keister.
W.K. Chester, Miami, for James V. Keister.
*34 HURLEY, Judge.
The wife, Charlotte B. Keister, appeals from a final judgment of dissolution. The husband, James V. Keister, cross appeals. We affirm in part and reverse in part.
The parties were married for ten years. The wife had been married once before, and has one child from her previous marriage. The husband, who had been married twice before, was adjudicated bankrupt before marrying Charlotte Keister. During the marriage, he worked for short periods of time in real estate offices and as a car salesman, grossing a total of about $53,000.
Although the record does not contain any evidence establishing the wife's exact net worth, the trial court found that she owned substantial assets which increased greatly in value during the ten years that the parties resided together. Included among those assets were several bank accounts maintained at Home Federal Savings & Loan Association ("Home Federal"). After she married James Keister she placed the accounts in the parties' joint names.
Shortly before the parties separated, the husband gained access to two safety deposit boxes maintained in both parties' names at Home Federal and removed $221,500.00 in cash, together with various jewelry, documents and other miscellaneous items of personal property. He also withdrew $154,000.00 from jointly held accounts at that institution. The trial court held that the husband was entitled to a one-half interest in the cash assets on the basis that the funds were jointly owned, or alternatively, on a theory of equitable distribution.
In addition to a share of the jointly held cash assets, the trial court further awarded the husband a one-half interest in the purchase price of a Cadillac Seville which the wife bought for $15,000 during the marriage. Thus, the husband received a total award of $144,250. He also received an award of permanent periodic alimony in the amount of $1,000 per month "until [he] dies or becomes married, whichever event shall occur first," and a partial attorney fee award of $56,970.00.
The husband remarried one of his former wives in Georgia after dissolution of the marriage, but before final judgment entered on March 31, 1982. On April 9, 1982, the wife filed a motion to amend or alter judgment, alleging, inter alia, that the husband was not entitled to periodic alimony or an attorney fee award because he had remarried. The motion was denied.
On appeal, the wife argues that the trial court erred by awarding the husband one-half of the jointly held cash assets, a one-half interest in the purchase price of the Cadillac Seville, and a partial attorney fee award of $56,970.00. She further argues that the court erred in denying her motion to alter or amend judgment. In his cross appeal, the husband maintains that he was erroneously denied an interest in certain New Jersey real estate owned by the wife, and that his award of cash assets was insufficient to effect a fair and equitable distribution of the marital assets.
We first address the wife's challenge to the award of $144,250.00 to the husband. The trial court noted that the husband's contribution to the jointly held cash assets was minimal, "if in fact there was any," but nevertheless awarded him a one-half interest therein on the justification that "the husband and wife during the marriage commingled funds derived from their separate endeavors, as well as their mutual efforts." Alternately, it found that the award was supported by the doctrine of equitable distribution.
We need not reach the issue of whether there is any record support for the lower court's finding of a commingling of funds, because we find that the husband waived any right he may have had to jointly held or acquired marital assets by virtue of several antenuptial agreements which he executed, one of which specifically provided for the release of any interest he may have in the following:
All real, personal, and tangible property held by Charlotte Brown Keister, or held jointly acquired by her or acquired jointly and at whatever time acquired by her or *35 jointly, and wheresoever situate, so that neither I or my heirs, executors, administrators, or assigns, nor any other person or persons for me, or in my place and stead, and them or any of them shall have, claim, or demand or pretend to have, claim, or demand, any right of title of elective share or demand any other right or demand whatsoever of, in or to the real, personal and tangible property of Charlotte Brown Keister or any part thereof.
Although the trial court upheld the validity of the property agreements, it came to the limited conclusion that by signing the contracts, "the husband intended, and did release and relinquish all right of curtesy and all other interests by virtue of title or as a result of the marriage in and to the wife's real property." (emphasis added.) The record is silent as to why the trial judge did not deem the release enforceable insofar as it purported to waive the husband's interest in the wife's personal property. We do not see any basis for severing the real estate provisions of the release from those pertaining to personal property, and therefore, we hold that the contract effectively waived the husband's interest in the jointly held cash assets. See generally Underwood v. Underwood, 64 So.2d 281 (Fla. 1953). Such a result is mandated regardless of whether any of the husband's minimal earnings were in fact deposited in those accounts,[1] because the broad language of the release covers "all ... personal ... property held by Charlotte Brown Keister or held jointly, acquired by her or acquired jointly, and at whatever time acquired by her or jointly... ." (emphasis added.) Accordingly, we reverse the husband's award of a one-half interest in the jointly held cash assets. For the same reason, we find that the trial court erred by awarding the husband a one-half interest in the Cadillac Seville which was purchased by the wife but titled in the names of both parties.
We next consider whether the trial court erred by ordering the wife to pay attorney's fees to the husband's former attorneys. The wife argues that the award was improper because (1) the proceedings were brought by the husband's discharged attorneys who had no standing to bring a suit under section 61.16, Florida Statutes (1983), (2) the husband remarried before entry of the final judgment of dissolution and thereby lost any entitlement he may have had to attorney's fees, and (3) the postnuptial agreements signed by the husband effectively waived his right to claim attorney's fees. She alternatively argues that the award was excessive.
The law firm of Dingwall, Morgan & Olsen appeared as counsel of record for the husband in this action and filed an amended counterclaim on his behalf which included a request for attorney's fees. The firm was still the attorney of record for the husband when the trial court entered its final judgment of dissolution, which included an award of attorney's fees and retained jurisdiction to determine the amount of the award at a later hearing.
The husband thereafter discharged the firm, which formally withdrew as counsel pursuant to a court order dated June 28, 1982. On July 7, 1982, an attorney's fee hearing was held. The trial court determined that $123,941.50 was a reasonable fee and ordered that the wife pay $56,970.00 of that amount.
The wife first contends that the attorney fee award was not authorized under section 61.16, Florida Statutes (1983) because the firm was not the attorney of record for the husband when the fee hearing was held. In support of that position, she cites Robinson v. Hucker, 423 So.2d 477 (Fla. 1st DCA 1982) and Baucom v. Baucom, 397 So.2d 345 (Fla. 3d DCA 1981), which hold that *36 only a party to a dissolution action may apply for an award of attorney's fees. Those cases do not control here, however, because the husband sought the award of fees in his pleadings, and the firm was still his counsel of record when the final judgment authorizing the attorney fee award to it was made. The firm is therefore entitled to enforce the award entered in its own name. See Baucom, supra.
The wife further argues that the husband's remarriage, which occurred nine months before entry of the final judgment, barred the award. In this connection she relies on Claughton v. Claughton, 393 So.2d 1061 (Fla. 1980), where the Supreme Court held that remarriage of a party to a dissolution proceeding bars an award of any type of alimony predicated on the need to support the recipient spouse. However, we do not believe that the attorney fee award is barred under Claughton because the purpose of a fee award under section 61.16 is not related to maintenance of a former spouse. Rather, it is designed to ensure that both parties to a divorce proceeding have a similar ability to secure competent legal counsel to represent their interests during the litigation. See Canakaris v. Canakaris, 382 So.2d 1197, 1205 (Fla. 1980).
We also reject the argument that the husband waived his right to claim attorney's fees by execution of various general releases because the agreements at issue do not contain an express waiver of attorney fees. See Scott v. Scott, 303 So.2d 683 (Fla. 4th DCA 1974).
Finally, we address the wife's challenge to the alleged excessiveness of the award. The trial court heard two expert witnesses testify that a reasonable fee for the services rendered to the husband by Dingwall, Morgan & Olsen was either $140,000.00 or $125,000.00. In addition, Mr. Olsen testified that 1,360 hours of representation were expended by the firm on the husband's behalf, and the wife did not attempt to contradict that testimony. On this record we cannot say that the trial court abused its discretion by finding that $123,941.50 was a reasonable attorney's fee, and ordering that the wife must pay $56,970.00 of that amount. See Posner v. Posner, 315 So.2d 175 (Fla. 1975); Adams v. Adams, 376 So.2d 1204 (Fla. 3d DCA 1979), cert. denied, 388 So.2d 1109 (Fla. 1980); cf. Larsen v. Larsen, 429 So.2d 725 (Fla.3d DCA), petition for rev. denied, 440 So.2d 352 (Fla. 1983). However, because we have decided to reverse the husband's award of $144,250.00, and thereby have substantially altered the results obtained by husband's former counsel, we must also reverse the attorney fee award and remand for reconsideration as to the amount of a reasonable fee in light of the final results obtained. See Adams, supra; Pfohl v. Pfohl, 345 So.2d 371 (Fla. 3d DCA 1977).
We have further considered the wife's contention that she was improperly excluded from the courtroom during certain portions of trial testimony, but decline to review this point on appeal because the record does not show that she raised any objection during the proceedings below. See Keller Industries, Inc. v. Morgart, 412 So.2d 950 (Fla. 5th DCA 1982); Diaz v. Rodriguez, 384 So.2d 906 (Fla. 3d DCA 1980).
Finally, we reject her challenge to the trial court's denial of her motion to amend judgment. For reasons discussed above, we do not believe that an attorney fee award is barred by the husband's remarriage. As for the award of periodic alimony, we do not find that the trial court erred by refusing to amend its final judgment, which ordered that the wife shall pay permanent periodic alimony "until the husband dies or becomes married, whichever event shall occur first." An amendment would have been unnecessary even if the judgment failed to provide for those contingencies, because remarriage terminates a party's entitlement to permanent periodic alimony payments as a matter of law. See Friedman v. Schneider, 52 So.2d 420 (Fla. 1951). See generally Frye v. Frye, 385 So.2d 1383 (Fla. 2d DCA 1980).
*37 We have reviewed the husband's points on cross appeal and find them meritless. Accordingly, we reverse the husband's award of $144,250.00. We also reverse his partial attorney fee award and remand for a redetermination as to what constitutes a reasonable fee. In all other respects, the judgment on appeal is affirmed.
GLICKSTEIN and DELL, JJ., concur.
NOTES
[1] We note that in any case the record does not support a finding of commingling. The husband's accountant testified at his deposition that the husband grossed a total of $53,138.00 between 1969 and 1977. According to the husband, he turned over all the money he made to the wife, who physically made all bank deposits. However, he did not testify or attempt to show that any of the money he earned was actually placed in any of the jointly held accounts.