613 So.2d 1330 (1992)
Barry B. WRIGHT, Appellant,
v.
Melinda S. WRIGHT, Appellee.
Nos. 91-0787, 91-1254.
District Court of Appeal of Florida, Fourth District.
December 9, 1992.
Clarification and Rehearing Denied March 18, 1993.
*1331 Jane Kreusler-Walsh of Klein & Walsh, P.A., West Palm Beach, for appellant.
Elaine Johnson James of Nason, Gildan, Yeager, Gerson & White, P.A., West Palm Beach, for appellee.
Jennifer S. Carroll of Metzger, Sonneborn & Rutter, P.A., West Palm Beach, for intervenor-Metzger, Sonneborn & Rutter, P.A.
POLEN, Judge.
The former husband, Barry B. Wright, is the appellant in consolidated appeals from an amended final judgment of dissolution of marriage. He was also the petitioner below. Appellee former wife, Melinda S. Wright, was initially represented by the law firm of Metzger, Sonneborn & Rutter, P.A. That firm is an intervenor in this appeal to defend the trial court's award to the wife of $20,000 in past due attorney's fees which the husband never paid after the wife dismissed that firm. We affirm in part, reverse in part and remand.
The parties married on April 20, 1985, and separated May 8, 1990. A child was born to the parties on November 3, 1985. At the time of trial, the husband was fifty-seven years old and the wife was thirty-nine. Both are in good health. The wife is a high school graduate who worked in real estate development at the time of the marriage and earned between $20,000 and $25,000 per year. The parties agreed that the wife would not work after the child was born. Accordingly, the wife allowed her real estate license to lapse. The husband is a self-made man who became wealthy through his business and sales management positions with various companies.
In 1969, the husband started his own company, Temporaries, Inc. He ran this company during the marriage, but eventually sold it to an English company, Blue Arrow, which later became known as Manpower. Despite the sale to Blue Arrow, the husband remained as the company's Chief Executive Officer until 1988 and as a consultant until 1990. During this time, the husband received substantial compensation for his services.[1] As a result, the parties lived a lavish life-style during their marriage which included expenditures amounting to approximately $3,500,000 on living expenses. This included an expenditure exceeding half a million dollars to decorate their Palm Beach home.
In its equitable distribution scheme, the trial court found that all but 140,000 remaining shares in Manpower titled in the *1332 husband's name were marital assets.[2] It awarded the wife, inter alia, $100,000 cash, the balance remaining of a $104,000 trust account with the wife's lawyer, four club memberships, the marital home (with responsibility for the mortgages, interest, principal, taxes and other household expenses), two of the parties' five automobiles, and $4,000 per month in rehabilitative alimony for eighteen (18) months to be followed by permanent periodic alimony of $2,000 per month. The court also awarded the wife $2,500 per month in child support, reasonable medical and dental expenses, medical and hospitalization insurance, and fifty percent of her attorney's fees and costs.
The husband first argues that the trial court effected a lopsided distribution of assets, which he claims resulted in the wife's receipt of the bulk of the liquid assets and none of the assets the husband pledged in his acquisition of certain loans to fund his business ventures. To support his argument, he provides charts labeled "Statement of Marital and Nonmarital Assets, Liabilities and Net Worth," as well as a "Plan of Equitable Distribution," both of which reflect his accountant's testimony at trial. We note, however, that the amended final judgment shows that the trial court found the wife's accountant to be more credible than the husband's. The trial court stated:
The testimony of the parties' accountants conflicted in several material regards. The court finds the methodology and testimony of the wife's accountant to be more persuasive as to the valuation of assets and the tracing of marital and premarital assets. The court therefore gave greater weight to the testimony of the wife's accountant in this Amended Final Judgment.
These are issues of fact we will not disturb on appeal without a showing of an abuse of discretion. See Hamlet v. Hamlet, 583 So.2d 654 (Fla. 1991); Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980). In particular, the husband questions the trial court's characterization of certain stock as marital assets; he contends that the court confused a premarital block of shares with shares the husband purchased during the marriage. However, the stock valuations, as well as the characterization of certain stock as marital as opposed to premarital, follows the testimony of the wife's accountant. The wife's accountant traced the origin of all of the securities. Those of an origin not clearly traceable to a time prior to the marriage he characterized as marital. Contrary to the husband's claim, the record supports, through the wife's accountant's testimony, that Blue Arrow, the company that purchased Temporaries, Inc., was willing to pay a premium of $29 per share to each shareholder in order to effect an early termination of its earn-out agreement with Temporaries, Inc. As part of the earn-out, the husband received an additional 303,827 shares of Blue Arrow/Manpower stock. The trial court gave greater weight to the wife's accountant and found that the stocks were compensation for the husband's efforts during the marriage as the Chief Executive Officer of the company and therefore a marital asset.[3] We find no abuse of discretion in the trial court's equitable distribution scheme and we affirm. Hamlet; Canakaris. We remand, however, for correction of the final judgment in areas which both parties agree in their briefs contain calculation errors.
The husband next contends that the trial court's award of permanent alimony was unjustified because the wife received a substantial equitable distribution. We agree. The record reflects that the *1333 wife was self-supporting prior to the parties' marriage. When a trial court determines whether to award permanent and/or rehabilitative alimony, it must balance several concerns. The husband's superior earning ability is but one factor. Kuvin v. Kuvin, 442 So.2d 203 (Fla. 1983); Kanouse v. Kanouse, 549 So.2d 1035 (Fla. 4th DCA 1989). As we stated in Geddes v. Geddes, 530 So.2d 1011 (Fla. 4th DCA 1988), the former husband's desire for the support obligation to be temporary must be balanced against the former wife's lost opportunities and ability to become self-supporting. The distribution scheme in the instant appeal enables the wife to leave this marriage at the age of thirty-nine with a great deal more than what she possessed when she entered it. Although we recognize that a short marriage alone does not preclude a permanent alimony award, the present record, considering her share of the equitable distribution, does not support that the wife is permanently without the means of self-support as a result of anything that transpired during the marriage. Kremer v. Kremer, 595 So.2d 214 (Fla. 2d DCA 1992).[4] Accordingly, we hold that the trial court abused its discretion when it awarded the wife permanent alimony, but we affirm the trial court's award of rehabilitative alimony to the wife. The latter award of rehabilitative alimony will allow the wife to renew her real estate license or otherwise maximize her capacity for self-support. Kremer; see also Fulks v. Fulks, 558 So.2d 205 (Fla. 2d DCA 1990) (upon dissolution of a six-year marriage, the husband's superior earning ability did not justify permanent alimony to a forty-year-old wife in good health capable of continuing her premarital employment), and Campbell v. Campbell, 432 So.2d 666 (Fla. 5th DCA 1983), pet. for rev. dismissed, 453 So.2d 1364 (Fla. 1984).
We affirm as to the husband's third and fourth points on appeal. Appellant has not shown an abuse of discretion in the trial court's award of child support and its award to the wife of fifty percent of her attorney's fees and costs.
DELL, J., and SEIDLIN, LARRY, Associate Judge, concur.
NOTES
[1] His earnings from 1985 were approximately $446,000 in 1985, $732,000 in 1986, $200,000 in 1987 and $1.7 million in 1988. During 1989 and 1990, the husband worked less and indicated no taxable income, but received a consultant fee of $10,400 per month from Blue Arrow until February, 1990.
[2] Three hundred three thousand eight hundred twenty-seven (303,827) shares of Manpower stock titled to the husband are being held in escrow pursuant to litigation between the husband and a former Temporaries, Inc., shareholder. The litigation resulted in a verdict for the husband, which would re-vest the stock in his name. The verdict, however, is now being appealed and the stock remains in escrow. These shares do not include the 140,000 deemed premarital.
[3] The sale took place in October, 1986, and the husband acted as Chairman and C.E.O. of Temporaries, Inc., until the end of the earn-out period in April, 1988, all of which was during the marriage.
[4] While one of the Kremer court's considerations in reversing a permanent alimony award was that no children were born of the marriage to be raised by the wife, we do not find this factor to be significant, in view of the distribution scheme.