672 So.2d 49 (1996)
Kenneth J. GREEN, Appellant,
v.
Ellen T. GREEN, Appellee.
Nos. 94-2339, 94-3504.
District Court of Appeal of Florida, Fourth District.
March 13, 1996.
Rehearing and Rehearing Denied May 8, 1996.
*50 Kevin F. Richardson of Clyatt & Richardson, P.A., West Palm Beach, for appellant/cross-appellee.
Jane Kreusler-Walsh of Jane Kreusler-Walsh, P.A., and Neil Jagolinzer of Christiansen & Jacknin, West Palm Beach, for appellee/cross-appellant.
Rehearing and Rehearing En Banc Denied May 8, 1996.
WARNER, Judge.
These two consolidated cases arise from the dissolution of marriage proceedings between the appellant, a golf professional, and the appellee, his wife. The husband challenges the awards of both permanent and rehabilitative alimony, child support, attorney's fees and costs, and the determination of the value and characterization of assets in equitable distribution. In other words, the husband was generally unhappy with the entire final judgment. The wife cross-appeals, arguing that the trial court erred in refusing to restore her former name, which the husband concedes was error. We reverse the awards of alimony and child support, but affirm the equitable distribution and valuations and award of attorney's fees and costs.
This was a short-term marriage. The parties were married for approximately six years at the time of the filing of dissolution. The marriage had been a second marriage for each party, who both had a child or children from their previous marriages. This marriage produced one child. Prior to the marriage, the wife worked as a water exercise instructor on a part-time basis, although she had a bachelor's decree in educational psychology. After the marriage, the wife did not work at all. When the wife consented to marry the husband, they agreed that she would travel extensively with the husband on his golf tours, supporting him emotionally and socially on the tour. While the wife states in her brief that they had an agreement that she would not work while their child was young, we find no record support for this statement. Our review of the record shows that both parties testified that the husband's expectation and their agreement was that she would not work so that she could travel and be with him. In fact, on some tournaments she had to leave her children at home, which bothered her, but she *51 fulfilled her role as his wife. The trial court found that she had made a significant contribution to his career through her efforts.
The wife came into the marriage with no assets. The husband had considerable assets and added to them during the marriage with his golf earnings. The husband made a substantial income, and the parties lived very well. An accountant testified that the family, while together, had living expenses of $30,000 per month, although the trial court found that the husband's monthly net income was only $15,960. The trial court equitably divided the marital assets on a 50/50 basis, and the wife received $697,893 in assets less the mortgage on the marital home. From the income-producing assets within the wife's share of equitable distribution, she receives an after-tax investment income of $1,420 per month.
The wife's vocational expert testified that the wife could obtain a teaching certificate within one year which would allow her to teach, earning a starting salary of $27,000. However, the expert thought it would take another year for her to find a job. Her expert further testified that the wife did not give up much of a career to marry the husband.
At the time of the final judgment, the wife was 36 years old, and the husband was 35. Both were in good health. The wife has lost no career opportunities as a result of the marriage. The wife has gained substantial assets from the marriage, leaving the marriage with a comfortable estate.
The trial court awarded the wife $3,000 per month in permanent alimony, primarily because the trial court found that she could not maintain the standard of living of the marriage without it. We hold that this was error. This was a short-term marriage, and generally permanent alimony is inappropriate unless a genuine inequity is created by the dissolution. Geddes v. Geddes, 530 So.2d 1011 (Fla. 4th DCA 1988). In short-term marriages, the standard of living occupies considerably less prominence than in long-term marriages and is certainly not dispositive of a decision to award permanent alimony. See Kremer v. Kremer, 595 So.2d 214 (Fla. 2d DCA 1992).
Moreover, the facts of this case follow closely the fact pattern in Wright v. Wright, 613 So.2d 1330 (Fla. 4th DCA 1992). In that case, we held that the wife of the five year marriage that produced one child was not entitled to permanent alimony where the wife left the marriage with substantial assets, even though she would not be able to support herself in the extraordinarily lavish lifestyle in which the parties had lived during the marriage. We wrote:
As we stated in Geddes, the former husband's desire for the support obligation to be temporary must be balanced against the former wife's lost opportunities and ability to become self-supporting. The distribution scheme in the instant appeal enables the wife to leave this marriage at the age of thirty-nine with a great deal more than what she possessed when she entered it. Although we recognize that a short marriage alone does not preclude a permanent alimony award, the present record, considering her share of the equitable distribution, does not support that the wife is permanently without the means of self-support as a result of anything that transpired during the marriage. Kremer. Accordingly, we hold that the trial court abused its discretion when it awarded the wife permanent alimony....
Id. at 1333 (citations omitted). Similar cases should yield similar results, and this case is very similar to Wright. See also Childers v. Childers, 640 So.2d 108 (Fla. 4th DCA 1994). This is not the exceptional case where a genuine inequity is created by a failure to award permanent alimony. The permanent alimony award is reversed.
The trial court also awarded the wife five years of $3,000 per month rehabilitative alimony, which the court termed "bridge-the-gap." This term refers to awards of rehabilitative alimony, not to retrain or rehabilitate a divorcing spouse, but to ease the transition between married life and being single. See Iribar v. Iribar, 510 So.2d 1023 (Fla. 3d DCA 1987); Murray v. Murray, 374 So.2d 622 (Fla. 4th DCA 1979). In Iribar, the court rejected the wife's contention that the rehabilitative alimony award *52 should have been for five years, finding that the trial court's eighteen month award of bridge-the-gap alimony was sufficient where the wife was possessed of sufficient job skills to support herself. Iribar, 510 So.2d at 1024. The wife in the instant case introduced evidence of a rehabilitative plan which would place her in the job market within two years, with an income substantially in excess of what she was earning prior to the marriage. Under the traditional rationale, five years of rehabilitative alimony is substantially in excess of what is required to make the wife self-supporting. The wife also contends that rehabilitative alimony is necessary so that she can stay at home with the minor child for several more years, but as we related in the facts, there was no agreement that the wife not work so that she could stay home with the children. Instead, the agreement made was that the wife would travel and take care of the husband. While there is some authority which would justify an alimony award on the necessity to take care of small children, see, e.g., Zeigler v. Zeigler, 635 So.2d 50 (Fla. 1st DCA 1994), first there must be a joint agreement as to the role of the wife in forgoing a career to take care of the children. Here, the agreement was something different. We therefore reverse and remand to the trial court to fashion a new rehabilitative award to accomplish the rehabilitative goals presented in the testimony. The trial court may also reconsider the amount of the award, given our reversal of the award of permanent alimony which changed the plan envisioned by the trial court in the final judgment.
In determining that the husband's child support obligation is $1,650 per month, the trial court failed to deduct the husband's court-ordered support obligation of $1,750 per month for his child from a previous marriage in arriving at his net monthly income. See § 61.30(4), Fla.Stat. (1993). We therefore reverse the child support award and remand for recalculation consistent with this opinion.
We affirm the remaining points on the appeals from the final judgment and from the order on costs and attorney's fees. However, we agree that the trial court erred in failing to address the wife's request for restoration of her former name, and on remand we direct the trial court to restore the wife's former name.
Affirmed in part, reversed in part, and remanded.
FARMER, J., concurs.
STEVENSON, J., dissents with opinion.
STEVENSON, Judge, dissenting in part.
I respectfully dissent from that part of the majority opinion which reverses the five year, $3,000 per month rehabilitative alimony awarded to the former wife. The trial court recognized that this temporary award exceeded the two year period after which the wife was expected to enter the job market as a teacher and expressly based this additional period of rehabilitative alimony on the "bridge-the-gap" theory that was approved by this court in Murray v. Murray, 374 So.2d 622 (Fla. 4th DCA 1979) and further discussed in Iribar v. Iribar, 510 So.2d 1023 (Fla. 3d DCA 1987). The facts of this case support such an award.
During the marriage, at the insistence of the husband, the wife had been a homemaker, was responsible for all domestic duties, and did not pursue any career opportunities. At the time of dissolution, the husband's net monthly income was $15,690 and the wife's projected gross monthly income (after spending approximately two years obtaining a teaching certificate and a teaching job) was optimally around $2,000 per month. The trial court found that "under any scenario of events ... [the wife] will never be able to attain a standard of living which remotely approaches the standard of living of her married life." In addition, although there was testimony concerning an approximate two year rehabilitation plan, the trial court never expressly placed its imprimatur on the plan and may have considered the wife's past unemployment history as a factor which would prevent her from quickly and easily obtaining employment stability.
Particularly in view of this court's reversal of the permanent alimony award of $3,000 per month, I cannot say that the trial court *53 abused its discretion in determining that a five year period of rehabilitative alimony was necessary to aid the wife in making the transition between living on the extraordinary income which she enjoyed as part of a family unit with her professional golfer husband, and the income which she now must generate on her own. "If reasonable men could differ as to the propriety of the action taken by the trial court, then the action is not unreasonable and there can be no finding of an abuse of discretion." Canakaris v. Canakaris, 382 So.2d 1197, 1203 (Fla.1980).
Accordingly, I would affirm the trial court's decision to award the former wife $3,000 per month rehabilitative alimony for a five year period.