708 So.2d 983 (1998)
Bart L. SEGALL, Appellant,
v.
Leslie F. SEGALL, Appellee.
Nos. 96-2328, 97-0667.
District Court of Appeal of Florida, Fourth District.
March 25, 1998.
*984 Susan R. Brown of Susan R. Brown, P.A., Hollywood, for appellant.
No brief filed on behalf of appellee.
MARRA, KENNETH A., Associate Judge.
Appellant, Bart L. Segall ("the Husband"), appeals the final judgment of dissolution entered below which dissolved his marriage to the appellee, Leslie Segall ("the Wife"). The Husband asserts that the trial court erred in: (1) unequally distributing the parties' marital assets and liabilities, (2) awarding the Wife permanent alimony, (3) calculating the amount of child support awarded to the Wife, and (4) awarding the Wife attorneys' fees. Because we agree that the trial court committed reversible error, we reverse the final judgment and remand for further proceedings.

I. BACKGROUND
The parties were married on July 20, 1985, and the Wife filed a petition for dissolution on September 9, 1993. At the time of trial, the Wife was almost 43 years old and the Husband was 49 years old. The parties had two minor children from the marriage.
In January of 1986, the parties purchased the marital home in Hollywood, Florida. At the beginning of the marriage, the Husband worked as an account executive at an advertising firm. In August of 1986, he began his career with a national real estate brokerage firm as a sales director and subsequently *985 became vice-president. The Husband continued his employment in this capacity until April of 1991, when he accepted a job with the brokerage firm in California as the North American Field Marketing Director. After commuting from California to Florida for the first year, the entire family relocated to California in April of 1992. The Wife subsequently left the Husband and relocated to Florida. The Husband later followed the Wife and children to Florida and, after an unsuccessful attempt at reconciliation, the parties permanently separated in October of 1992.
The Wife began working full-time as a registered nurse in January of 1993. The Husband began working as a realtor in an independent contractor capacity in September of 1995. Estimates of the Husband's anticipated earnings ranged between $50,000 and $100,000. The Wife earned $35,000 in salary during 1995, working forty hours per week.

II. THE TRIAL COURT ERRED IN PERFORMING AN EQUITABLE DISTRIBUTION OF MARITAL ASSETS AND LIABILITIES

A. Unequal Equitable Distribution
Section 61.075(1), Florida Statutes (1993), mandates an equitable distribution of net marital assets unless there is a justification for an unequal distribution based on all relevant factors. Regardless of whether the distribution is equal or unequal, the distribution must be accompanied by specific written findings of fact as to the following:
(a) Clear identification of nonmarital assets and ownership interests;
(b) Identification of marital assets, including the individual valuation of significant assets, and designation of which spouse shall be entitled to each asset;
(c) Identification of the marital liabilities and designation of which spouse shall be responsible for each liability;
(d) Any other findings necessary to advise the parties or the reviewing court of the trial court's rationale for the distribution of marital assets and allocation of liabilities.
§ 61.075(3).
The trial court awarded the Wife: the marital home, which had an equity value of approximately $40,000;[1] the sum of $9,000; and the Wife's unvalued pension. In contrast, the court awarded the Husband: $9,100, the value of marital assets that the court found that he had previously sold; the Husband's depleted pension; and $1,780 in marital debt.
The only specific justifications given by the trial court for this unequal division were the Husband's purported significant expenditures to purchase personal items and his alleged dissipation of the parties' marital assets. In Gentile v. Gentile, 565 So.2d 820 (Fla. 4th DCA 1990), this Court described dissipation of assets as a situation where one spouse used marital funds for his or her own benefit, and for a purpose unrelated to the marriage at a time when the marriage was undergoing an irreconcilable breakdown. See id. at 823 (citations omitted). In 1993, the Legislature adopted this concept in section 61.075, when it added the following as a factor for the court to consider in distributing marital assets:
The intentional dissipation, waste, depletion, or destruction of marital assets after the filing of the petition or within 2 years prior to the filing of the petition.
§ 61.075(1)(i).
The evidence in the instant case does not support the trial court's inequitable distribution based on its enumerated findings. In fashioning its distribution scheme, the trial court relied upon many matters which arose before there was any evidence of an irreconcilable breakdown in the marriage. Moreover, several of these expenditures were nothing more than purchasing decisions made during the course of the marriage.
*986 The evidence in the record is insufficient to support the conclusion that the Husband's alleged uncontrolled spending and mismanagement of money constituted "intentional dissipation, waste, depletion, or destruction of marital assets," sufficient to warrant an inequitable distribution. See Gentile, 565 So.2d at 823 (husband's mismanagement of family's finances did not constitute marital misconduct to be considered in fashioning distribution scheme); Monas v. Monas, 665 So.2d 346, 347 (Fla. 4th DCA 1995) (inequitable distribution not justified on basis of husband's alleged squandering of assets). In Geddes v. Geddes, 530 So.2d 1011 (Fla. 4th DCA 1988), this Court stated that:
those entering into a marriage partnership must share not only the benefits and successes of the relationship, but also the risk of failure and the economic consequences to the parties of such failure.
Id. at 1018. Thus, the trial court erred in awarding a greater share of the marital assets to the Wife on the basis of the findings in its final judgment.

B. Pension Plan
The Husband liquidated his pension plan in October of 1992 and subsequently used it for living expenses and child support payments. The final judgment stated that "[t]he Court determines that the parties shall keep their own respective retirement accounts and plans without claim from the other party." This provision of the final judgment also stated that the parties' pension/retirement benefits accrued during the marriage.
Section 61.075(6) states that the date for determining the marital assets and liabilities, and the value of such assets and the amount of such liabilities, is the earlier of the date the parties entered into a valid separation agreement or the date of filing of a petition for dissolution of marriage, unless the trial judge determines another date is just and equitable under the circumstances. Thus, the trial court's classification of the Husband's pension plan as a marital asset, when it was liquidated one year prior to the filing of the petition, was improper. In the absence of any findings that the Husband wrongfully depleted the pension through any misconduct or that the pension was used for any purpose that would support crediting the value of this depleted asset to him, the court erred in distributing the value of this depleted pension as a marital asset to the Husband. See Cooper v. Cooper, 639 So.2d 153, 155 (Fla. 2nd DCA 1994)(error to distribute value of husband's IRA liquidated before final hearing and used to pay temporary support order).
The trial court also failed to comply with the dictates of section 61.075(3)(b), by not identifying the value of the Wife's pension. Upon remand, the trial court is directed to strike that portion of the judgment awarding the Husband's depleted pension to him, identify the value of the Wife's pension, and specify the date it is using to determine and value the marital assets and liabilities if it is other than the date of the filing of the petition.

C. Marital Debt
The trial court also erred in failing to equitably distribute more than $30,000 in marital debt. Other than the $1,780 Macy's debt, which the court specifically allocated to the Husband, the trial court failed to perform an equitable distribution of this marital debt. The court's failure to make findings clearly identifying the marital liabilities and designating which spouse was responsible for each, as required by section 61.075(3)(c), constitutes reversible error. See Keaton v. Keaton, 634 So.2d 798, 799 (Fla. 4th DCA 1994)(reversed equitable distribution scheme for failure to make statutory findings required by section 61.075(3)). Upon remand, the trial court is directed to specifically identify and equitably distribute the parties' marital liabilities.

III. THE TRIAL COURT ABUSED ITS DISCRETION IN ITS AWARD OF PERMANENT ALIMONY TO THE WIFE
Section 61.08(1), Florida Statutes (1993), directs the trial court to "include findings of fact relative to the factors enumerated in subsection (2) supporting an award or denial of alimony." Although the court's final *987 judgment tracked the language of section 61.08(2) in discussing the factors it considered, it failed to make findings of fact relative to those factors. The only finding supporting the trial court's award of permanent alimony was that the Wife's "past income and ability to earn future income so as to maintain the lifestyle established during the marriage" was limited to less than one-half of the Husband's past annual income-earning ability. This finding was insufficient.
In determining whether to award permanent periodic alimony, the trial court must consider the needs of the spouse requesting the alimony and the ability of the other spouse to make alimony payments. See Canakaris v. Canakaris, 382 So.2d 1197, 1201 (Fla.1980). The trial court awarded the Wife $692 per month in permanent alimony, primarily because it found that she could not maintain the standard of living of the marriage without it. First, the court never made any finding regarding the standard of living established during the marriage. Second, a permanent alimony award is generally inappropriate in a short-term marriage unless the dissolution created a genuine inequity. See Green v. Green, 672 So.2d 49, 51 (Fla. 4th DCA 1996)(permanent alimony award in six-year marriage with one child denied where wife left marriage with substantial assets and did not experience any loss of career opportunities despite husband's high income and parties' substantial lifestyle). "In short-term marriages, the standard of living occupies considerably less prominence than in long-term marriages and is certainly not dispositive of a decision to award permanent alimony." Id. Although a short-term marriage alone does not preclude a permanent alimony award, the record in the instant case does not support the notion that the Wife is permanently without the means of self-support as a result of anything that transpired during the marriage. See Kremer v. Kremer, 595 So.2d 214, 215-16 (Fla. 2d DCA 1992)(error to award permanent alimony to thirty-six year old wife of six-year marriage with no children where wife supported herself before marriage and was capable of doing so after marriage).
Moreover, the Husband's higher income did not automatically justify an award of permanent alimony. See Aresty v. Weinstein, 667 So.2d 846, 847 (Fla. 3d DCA 1996)(award of permanent alimony improper where forty-five year old wife of twelve-year marriage with two children was capable of becoming self-sustaining; although husband was capable of earning more than wife, this finding alone did not constitute sufficient basis for permanent alimony award); Cornell v. Smith, 616 So.2d 629, 630 (Fla. 4th DCA 1993)(despite wife's assertions of husband's uncontrolled spending and mismanagement of money, "mere disparity in incomes is not sufficient to justify an award of permanent alimony where the wife is relatively young and her earning capacity has not been impaired as a result of the marriage"); Wright v. Wright, 613 So.2d 1330, 1333 (Fla. 4th DCA 1992)(error to award permanent alimony to thirty-nine year old wife of five-year marriage with one child where wife received substantial equitable distribution and was self-supporting before marriage but husband's earning capacity was superior).
Furthermore, the Husband's alleged uncontrolled spending and mismanagement of money were insufficient reasons to support an award of permanent alimony. There was no showing that the Husband's alleged misconduct depleted the parties' marital assets or permanently affected the Wife's earning capacity. See Cornell, 616 So.2d at 630 (spouse's mismanagement of funds insufficient basis to support award of permanent alimony); cf. Siegel v. Siegel, 564 So.2d 226, 228 (Fla. 5th DCA 1990)(error to award permanent alimony in short-term marriage despite wife's claim of husband's abuse and addiction to alcohol and drugs).
In the absence of sufficient factual findings concerning the statutory factors, it is impossible for this court to assess the reasonableness of the permanent alimony award. See Benters v. Benters, 655 So.2d 1243, 1244 (Fla. 5th DCA 1995)(court required to make sufficient findings of fact relative to statutory factors in section 61.08(2) to support permanent alimony award); Woodard v. Woodard, 634 So.2d 782, 783 (Fla. 5th DCA 1994)(same). Therefore, *988 we reverse the award of permanent alimony to the Wife and remand to the trial court with instructions to either make sufficient findings of fact to enable this court to determine the appropriateness of the permanent periodic alimony award, or to consider another form of alimony which would be supportable by the record in this case. See Corchado v. Corchado, 648 So.2d 1261 (Fla. 4th DCA 1995)(discussing the appropriateness of rehabilitative or "bridge-the-gap" alimony as opposed to permanent periodic alimony); see also Aresty, 667 So.2d at 846 (same); Campbell v. Campbell, 432 So.2d 666, 668 (Fla. 5th DCA 1983)(same).[2]

IV. THE TRIAL COURT ABUSED ITS DISCRETION IN ITS AWARD OF CHILD SUPPORT TO THE WIFE
In establishing the child support guidelines, section 61.30, Florida Statutes (1993), the legislature established a presumptive amount that the trier of fact shall order as child support. See § 61.30(1)(a). Section 61.30(1)(a) further provides that:
The trier of fact may order payment of child support in an amount which varies more than 5 percent from such guideline amount only upon a written finding, or a specific finding on the record, explaining why ordering payment of such guideline amount would be unjust or inappropriate.

(emphasis added).
The final judgment in this case calculated the child support award without making any specific findings regarding the amount of the parties' present net incomes. As this court recognized in Jones v. Jones, 636 So.2d 867 (Fla. 4th DCA 1994):
[w]ithout the benefit of explicit findings on net income attributable to the husband and the wife, we are unable to determine if the amount of [child] support is within the guidelines or substantially exceeds the guidelines. It may be that the trial court imputed additional income to the former husband, but factual findings as to the probable and potential earnings level, source of imputed and actual income and adjustments to income must also be set forth.... Such findings assist the appellate court in determining whether the statutory support guidelines were properly applied....
....
While we give full weight to the exercise of the trial court's sound discretion, the only way to evaluate its discretion is for the trial court to make explicit findings either on the record or by written order. The child support statute mandates this and meaningful appellate review requires it.
Id. at 868-69 (citations omitted)(emphases added). Thus, in the absence of explicit factual findings concerning the actual incomes attributable to the Husband and the Wife, the amount and source of any imputed income, the probable and potential earnings level, and the adjustments to income, the trial court's final judgment was deficient. See id.; accord Bimonte v. Martin-Bimonte, 679 So.2d 18, 19 (Fla. 4th DCA 1996); Viscito v. Menditto, 644 So.2d 135, 136 (Fla. 4th DCA 1994); Levine v. Best, 595 So.2d 278, 279 (Fla. 3d DCA 1992). Without the requisite factual determinations, this court is unable to ascertain whether the trial court's child support award was within the guidelines *989 or exceeded the guidelines by more than five percent.[3]
Therefore, we reverse the child support award and remand to the trial court for the court to reconsider and to make specific findings as to the amount and source of the parties' actual income and any imputed income, or to set forth its reasons for deviating from the guideline amounts in accordance with section 61.30(1)(a).

V. THE TRIAL COURT ERRED IN GRANTING THE WIFE'S ATTORNEYS' FEES
An award of attorneys' fees and costs in a dissolution proceeding depends upon the relative financial circumstances of the parties, as per section 61.16, Florida Statutes (1993), and the proper inquiry is whether one spouse has a need for such fees and the other has the ability to pay them. See Montante v. Montante, 627 So.2d 554, 556 (Fla. 4th DCA 1993); see also Rosen v. Rosen, 696 So.2d 697, 700 (Fla.1997)(court may consider all circumstances surrounding suit in awarding fees under section 61.16). The trial court found that the Husband was "completely capable to pay" the Wife's attorneys' fees and costs.
However, where, as here, the results of an appeal materially change the parties' abilities to pay, the issue of attorneys' fees must be revisited upon remand to the trial court. See Keister v. Keister, 458 So.2d 32, 36 (Fla. 4th DCA 1984); Conner v. Conner, 439 So.2d 887, 887 (Fla.1983). In light of our reversal of the equitable distribution of the parties' property and the awards of permanent alimony and child support, this court cannot accurately evaluate if the Husband is truly in the best financial position to pay for the Wife's attorneys' fees. See Thilem v. Thilem, 662 So.2d 1314, 1317 (Fla. 3d DCA 1995); Kovar v. Kovar, 648 So.2d 177, 179-80 (Fla. 4th DCA 1994); Avery v. Avery, 548 So.2d 865, 866 (Fla. 4th DCA 1989).
Therefore, we reverse the trial court's award of attorneys' fees and remand to the trial court for reconsideration in light of the changes in the parties' relative financial resources following the trial court's ultimate ruling. See Corchado, 648 So.2d at 1261 (reversed alimony award and vacated order denying attorneys' fees to trial court for re-examination in light of subsequent findings on remand); Wendroff v. Wendroff, 614 So.2d 590, 596 (Fla. 1st DCA 1993)(reversed equitable distribution, alimony, and child support awards and remanded for reconsideration of entitlement to attorneys' fees in light of ruling on remand).[4]
*990 Based upon the foregoing, we reverse the final judgment of dissolution and remand to the trial court for further proceedings consistent with this opinion.
STEVENSON, J., and PARIENTE, BARBARA J., Associate Judge, concur.
NOTES
[1] There is no basis in the record for the court's valuation of the home at $170,000 in the final judgment. The Wife's financial affidavit indicated that the value was $190,000. The court's valuation of the mortgage at $159,000 is similarly erroneous in light of the Wife's testimony that the current mortgage value was either $148,000 or $148,600.
[2] Furthermore, the portion of the alimony award entitling the Wife to 12 percent of the Husband's taxable income in each taxable year was erroneous as a matter of law. See Sanford v. Sanford, 440 So.2d 1319, 1320 (Fla. 4th DCA 1983)(reversed automatic percentage portion of order awarding permanent periodic alimony to wife in sum of $80.00 per week or 20 percent of husband's gross income, whichever greater); see also Joseph v. Joseph, 681 So.2d 888, 889 (Fla. 4th DCA 1996)(reversed trial court's award to wife of 25 percent of any gross bonus husband receives in years wife receives alimony and/or child support); Hamilton v. Hamilton, 552 So.2d 929, 932 (Fla. 1st DCA 1989)(reversed provision of final judgment awarding as permanent alimony 50 percent of husband's future net annual raises and 35 percent of future bonuses). This court recognized in Hitt v. Hitt, 571 So.2d 79 (Fla. 4th DCA 1990), that "there can be no provision for an automatic change in the amount of alimony awarded unless the evidence supports a finding that the receiving spouse's financial position will in fact change in the future." Id. at 80 (emphasis in original). As such, the Wife could avail herself of the court's modification jurisdiction if the Husband's ability to pay increased and she could establish the requisite need.
[3] The court's determination that the Husband's prior ability to pay $1,500 for temporary support justified the current award of $1,500 did not constitute a legally cognizable basis to ignore the statutory child support guidelines. Cf. Crowley v. Crowley, 672 So.2d 597, 600 (Fla. 1st DCA), rev. denied, 680 So.2d 421 (Fla.1996)(past income should not take precedence over uncontroverted evidence of spouse's present income in determining ability to pay). Furthermore, the final judgment erroneously cited section 61.30(1)(b)(2), which no longer exists, in support of the finding that the guidelines were inapplicable because the combined net income of the parties exceeded the specified statutory amount. Even applying the highest estimate of the Husband's annual income, $120,000, the parties' combined net incomes still would not exceed the highest monthly net income amount of $10,000 provided for in the child support guidelines chart. Assuming, arguendo, that the incomes did exceed the statutory guidelines amount, section 61.30(6) provides for the court's calculation of support awards based on combined net monthly incomes in excess of $10,000.
[4] The trial court also erred in prematurely determining that the Wife's attorneys' fee award was in the nature of support and not dischargeable in bankruptcy. State courts have concurrent jurisdiction with bankruptcy courts to determine the dischargeability of debts in bankruptcy. See Huey v. Huey, 643 So.2d 1141, 1142 (Fla. 4th DCA 1994). Whether a debt is dischargeable under the federal bankruptcy law is a question of fact, and the reviewing court cannot disturb the lower tribunal's findings regarding the dischargeability of debts in bankruptcy unless those findings are clearly erroneous. See Scharmen v. Scharmen, 613 So.2d 121, 123 (Fla. 1st DCA 1993).

A debt is generally nondischargeable when the fees were incurred either through litigation of alimony, maintenance, or support issues, or through litigation of issues "so tied in with the obligation of support as to be in the nature of support or alimony." Id. (citation and quotation omitted). However, whether a debt is dischargeable and what constitutes alimony, maintenance or support is to be determined under federal bankruptcy law. See Huey, 643 So.2d at 1142; Scharmen, 613 So.2d at 123. If the Husband files a petition under the Bankruptcy Code seeking to discharge this award, the trial court could make a determination that the Wife's award was in the nature of support and therefore not dischargeable in bankruptcy. See Giller v. Giller, 625 So.2d 1246, 1247 (Fla. 3d DCA 1993)(no error in trial court's determination that previous attorneys' fees award in dissolution action was debt in nature of support and not dischargeable by bankruptcy).