727 So.2d 954 (1998)
Diosdado C. DIAZ and Dennis Haber, Esq., Appellants,
v.
Rina Cohan DIAZ and Leinoff & Silvers, P.A., Appellees.
No. 97-334.
District Court of Appeal of Florida, Third District.
November 4, 1998.
Rehearing Denied April 7, 1999.
*955 Deborah Marks, North Miami; Dittmar & Hauser and Helen Hauser, Coconut Grove, for appellants.
Leinoff & Silvers and Mark Gatica; Ellis Rubin, and Robert I. Barrar, Miami, for appellees.
Before SCHWARTZ, C.J., and COPE and GODERICH, JJ.
COPE, Judge.
In this post-judgment proceeding, the former husband in a dissolution action and his counsel appeal an assessment of attorney's fees against them. We affirm.
Appellant Diosdado Diaz and appellee Rina Cohen Diaz were married in 1984. At the time of the marriage, Rina owned certain shares of stock in her father's privately held corporation and was the beneficiary of a trust established by her father. The trust held shares of the father's corporations and was revocable. However, Rina received the income from the trust which was used to supplement the income she was then earning as a member of the Dade County State Attorney's office. Because the shares were already owned and the trust had been previously established, the parties entered into a pre-nuptial agreement whereby Diosdado waived any claim to any interest in shares of Rina's father's corporations. At the time of the marriage Diosdado was a career police officer.
During the marriage, the parties maintained separate finances in all respects, except that the parties filed joint income tax returns. The parties resided in a home already owned by Rina for which she continued to pay all expenses. Because Diosdado consequently had few expenses, he was able to make substantial contributions to retirement and deferred compensation funds for which he was eligible. Rina left the State Attorney's office and opened a private law practice.
During the marriage the parties maintained a comfortable lifestyle, living in the home Rina owned and driving modest cars, but enjoying some fine dining and travel which was paid for by Rina's parents. Rina's family provided other gifts for the family, but the parties also incurred $36,000 in credit card debt.
In 1989 the parties' daughter was born. Rina became essentially a full-time caregiver and earned very little income from her law practice. Because of Rina's separate income from the trust it was not necessary for Rina to practice law.
The parties separated in June 1994, and in the fall Rina made a pre-suit settlement offer in hopes of resolving the dissolution of marriage by agreement. Rina requested that Diosdado pay approximately $200 per month in child support, an amount well below the child support guidelines, and maintain health insurance for the child. Under the proposal, neither party would receive equitable distribution or alimony from the other. During the marriage Diosdado had accumulated $325,000 in pension and deferred compensation benefits, which were marital property; under the settlement proposal, these assets would have remained his alone. Rina's significant assets, by contrast, were all nonmarital. Diosdado refused the settlement offer and made no counteroffer.
In November 1994, Rina filed a petition for dissolution of marriage. Diosdado filed a counterpetition in which he asked, among other things, for permanent alimony. Both parties agreed that Rina should have primary residential responsibility for the child.
Diosdado thereafter attempted to obtain discovery relating to the trust, the assets of the trust, the income earned thereby and the assets of the corporations. Eventually, Diosdado conceded that the trust and its assets were nonmarital property and ceased his efforts to make them part of the marital estate. He continued to press his claim for alimony. In March 1995, Rina made a subsequent offer to settle for $500 per month in child support plus health insurance, but with each party maintaining their assets. That offer was also rejected and no counteroffer made. Mediation was unsuccessful.
The case ultimately went to a three-day trial. In the final judgment of dissolution, the trial court denied Diosdado's alimony claim. The court found that $325,000 of Diosdado's *956 pension and deferred compensation plans were marital and awarded Rina a twenty-five percent share. The court ordered Diosdado to pay $600 per month in child support, pursuant to the guidelines, plus health insurance. Both parties appealed and the judgment was affirmed.
Pursuant to a reservation of jurisdiction, the trial court conducted an evidentiary hearing on the wife's motion to assess attorney's fees against Diosdado and his counsel.[1]
The trial court found that "Respondent exercised bad faith in litigating these proceedings and caused a dissipation of assets and expenditure of funds in a wasteful and inappropriate fashion." The court then determined that the husband and his counsel should be responsible for paying $40,000 of the wife's attorney's fees and court costs, leaving the wife responsible for $32,000 in attorney's fees and court costs. The husband and his counsel have appealed, contending that there was no authority for such an award, and alternatively, that under the circumstances the attorney's fee award is unreasonable.
We begin with the Florida Supreme Court's recent decision in Rosen v. Rosen, 696 So.2d 697 (Fla.1997), which interpreted section 61.16, Florida Statutes. Section 61.16 authorizes the trial court, "after considering the financial resources of both parties, [to] order a party to pay a reasonable amount for attorney's fees, suit money, and the cost to the other party of maintaining or defending any proceeding under this chapter...." § 61.16(1), Fla. Stat. (Supp.1996). The court said:
[P]roceedings under chapter 61 are in equity and governed by basic rules of fairness as opposed to the strict rule of law.... The legislature has given trial judges wide leeway to work equity in chapter 61 proceedings. Thus, section 61.16 should be liberallynot restrictivelyconstrued to allow consideration of any factor necessary to provide justice and ensure equity between the parties.
Section 61.16 constitutes a broad grant of discretion, the operative phrase being "from time to time." The provision simply says that a trial court may from time to time, i.e., depending on the circumstances surrounding each particular case, award a reasonable attorney's fee after considering the financial resources of both parties. Under this scheme, the financial resources of the parties are the primary factor to be considered. However, other relevant circumstances to be considered include factors such as the scope and history of the litigation; the duration of the litigation; the merits of the respective positions; whether the litigation is brought or maintained primarily to harass (or whether a defense is raised mainly to frustrate or stall); and the existence and course of prior or pending litigation. Had the legislature intended to limit consideration to the financial resources of the parties, the legislature easily could have said so.
... We further find that a court may consider all the circumstances surrounding the suit in awarding fees under section 61.16. Moreover, in situations where a court finds that an action is frivolous or spurious or was brought primarily to harass the adverse party, we find that the trial court has the discretion to deny a request for attorney's fees to the party bringing the suit.

696 So.2d at 700-01 (citations omitted; emphasis added).[2]
Here the wife made a presuit effort to settle this case with a very generous settlement offer. The trial judge concluded, and we agree, that under any reasonable analysis at the start of the case, it should have been clear that the husband could not do better, and most likely would do much worse, by litigating the case. Despite overwhelming odds of a litigation disaster, the husband rejected settlement, made no counterproposal, *957 and embarked on an expensive and wasteful litigation strategy.
From a child support standpoint, the wife proposed that the husband pay approximately $200 per month in child support, an amount which was far below the child support guidelines. It should have been clear at the outset that in the event of litigation, the husband likely would have to pay guidelines support, and that was the ultimate result. In the end Diosdado was ordered to pay $600 per month.
From an equitable distribution standpoint, the marital home, the wife's stock, and the trust assets were all the wife's separate nonmarital property and had maintained that separate status throughout the marriage. The only significant marital asset was the portion of the husband's pension and deferred compensation plans to which he had contributed substantially during the marriage. The marital portion of those assets was valued at approximately $325,000. The wife's settlement proposal would have allowed the husband to retain the entirety of those assets. It should have been clear that by electing to litigate, presumptively the wife would be entitled to one-half of the $325,000 sum. In the end, after trial, the court awarded one-fourth of those assets to the wife.[3]
From the standpoint of alimony, the trial court concluded that the claim for permanent periodic alimony was at best a longshot. This marriage lasted ten years from the date of marriage to date of separation. It falls into the so called "gray area" for permanent alimony. See Victoria M. Ho & Janeice T. Martin, Appellate Court Trends in Permanent Alimony for "Gray-Area" Divorces, 71 Fla. B.J. 60 (Oct.1997). Here, the husband was forty-four years old at the time of the final hearing, productively employed with an increasing income, and in good health. Although the wife had the greater income, the husband's income was in the $55,000 to $80,000 range in the three years prior to the decree. The husband's request at the conclusion of the trial was for $500 per month permanent periodic alimony plus a $15,000 lump sum award. Both requests were refused.
The trial court concluded that at the outset of this case, it should have been obvious that (1) the wife had made a generous and desirable settlement offer; (2) there was no realistic possibility to do better in litigation; and (3) there was a high probability that the husband in litigation would do much worse. In litigation, it was probable that the $200 per month child support figure would increase to the much higher guidelines level; that fifty percent of the marital share of the husband's pension and retirement plans would be placed at risk; and that the permanent alimony claim was unlikely to succeed. The trial court concluded that the majority of the time spent on litigation in this case was baseless. We conclude that this determination is supported by competent substantial evidence.
We acknowledge that section 61.16, Florida Statutes, is not intended to operate as an offer-of-judgment statute. Thus, the fact that the husband obtained a bad result in litigation does not, in and of itself, warrant an assessment of attorney's fees against him. See Aue v. Aue, 685 So.2d 1388 (Fla. 1st DCA 1997). However, the award in this case is not based simply on the poor result. Instead, the trial court analyzed the issues in the case as they should have reasonably appeared at the outset.
The husband counters that at the outset of the case, the husband had less-than-complete information about the parties' financial positions because of the parties' unusual financial arrangements. The husband did, of course, have the parties' joint income tax returns, but he points out that he was not privy to the wife's other financial records.
However, as the court noted, in the presuit stage, the husband never made any request for additional information so as to allow him to evaluate the reasonableness of the wife's settlement proposal. The husband never countered with a settlement proposal of his *958 own. The husband instead opted for litigation, unproductive discovery battles, and pursuit of claims with no reasonable prospect of success.
We turn next to the appeal of the husband's counsel.[4] As recently summarized in Smallwood v. Perez, 717 So.2d 154, 23 Fla. L. Weekly D2134 (Fla. 3d DCA 1998):
Courts have the inherent power to assess attorney's fees against counsel for litigating in bad faith. See Patsy v. Patsy, 666 So.2d 1045, 1047 (Fla. 4th DCA 1996); Sanchez v. Sanchez, 435 So.2d 347, 350 (Fla. 3d DCA 1983); see also Roadway Express, Inc., v. Piper, 447 U.S. 752, 764-67, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980). See generally Alan Stephens, Annotation, Attorney's Liability Under State Law for Opposing Party's Counsel Fees, 56 A.L.R.4th 486 (1987); Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. United States Fire Ins. Co., 639 So.2d 606, 608-09 (Fla.1994) (discussing trial court's inherent powers). "A court must, of course, exercise caution in invoking its inherent power, and it must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees...." Chambers v. NASCO, Inc., 501 U.S. 32, 50, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (citation omitted); see also Patsy, 666 So.2d at 1047.
23 Fla. L. Weekly at D2135, 717 So.2d at 156. Under the circumstances existing here, we conclude that the trial court was authorized to enter an attorney's fee award against counsel, and that the award is supported by the record.
The husband's counsel contends that an award of attorney's fees should not be allowed in circumstances like the present case because the attorney is not able to defend himself without breaching the attorney client privilege. We disagree. The trial court's evaluation was based on the facts which were reasonably known prior to filing suit and soon thereafter. There was no suggestion in the trial court that the husband's counsel was misled in any way by the husband. We leave for another day what the procedure should be in the event that an attorney desires to defend against a claim of this type on the basis that he or she had reasonably relied on the representations of the client in making litigation decisions.[5]
Affirmed.
NOTES
[1] Counsel on this appeal did not serve as trial counsel.
[2] Although the Rosen decision was written in the context of a denial of attorney's fees, the principles outlined there also authorize an award of fees to the opposing side, if there is an appropriate showing.
[3] In the final judgment, the trial court found equitable reasons to deviate from the otherwise presumptive fifty-fifty division.
[4] In this appeal, the husband and the husband's counsel are separately represented.
[5] The same issue potentially exists in claims made under section 57.105(1), Florida Statutes (1997), which states in part:

The court shall award a reasonable attorney's fee to be paid to the prevailing party in equal amounts by the losing party and the losing party's attorney in any civil action in which the court finds that there was a complete absence of a justiciable issue of either law or fact raised by the complaint or defense of the losing party; provided, however, that the losing party's attorney is not personally responsible if he or she has acted in good faith, based on the representations of his or her client.
(Emphasis added).