826 So.2d 229 (2002)
Diosdado DIAZ and Dennis Haber, Esq., Petitioners,
v.
Rina Cohan DIAZ and Leinoff & Silvers, P.A., Respondents.
No. SC95534.
Supreme Court of Florida.
February 28, 2002.
*230 Deborah Marks of Abrams, Etter & Marks, P.A., Miami, FL; and Helen Ann Hauser of Dittmar & Hauser, Coconut Grove, FL, for Petitioners.
Mark A. Gatica of Markowitz, Davis, Ringel & Trusty, P.A., Coral Gables, FL; Robert Barrar of Rubin and Barrar, P.A., Miami, FL; and Andrew M. Leinoff & Associates, P.A., Coral Gables, FL, for Respondents.
Cynthia L. Greene, Miami, FL, for the Family Law Section of The Florida Bar, Amicus Curiae.
David B. Pakula, Fort Lauderdale, FL, for Florida Defense Lawyers Association, Amicus Curiae.
Roy D. Wasson, Miami, FL, for Academy of Florida Trial Lawyers, Amicus Curiae.
PARIENTE, J.
We have for review Diaz v. Diaz, 727 So.2d 954 (Fla. 3d DCA 1998), a decision of the Third District Court of Appeal, which expressly and directly conflicts with the decision of the Second District Court of Appeal in Israel v. Lee, 470 So.2d 861 (Fla. 2d DCA 1985), on the issue of whether trial courts possess the inherent authority to assess attorneys' fees as monetary sanctions against counsel for bad faith conduct during the course of litigation. We have jurisdiction. See art. V, § 3(b)(3), Fla. Const.
This case arises out of a dissolution of marriage proceeding in which the former husband and his attorney were sanctioned for "bad faith in litigating these proceedings and caus[ing] a dissipation of assets and expenditure of funds in a wasteful and inappropriate fashion." Diaz, 727 So.2d at 956. The trial court determined that "the husband and his counsel should be responsible for paying $40,000 of the wife's attorney's fees and court costs, leaving the wife responsible for $32,000 in attorney's fees and court costs." Id.
As elaborated by the Third District:
The trial court concluded that at the outset of this case, it should have been obvious that (1) the wife had made a generous and desirable settlement offer; (2) there was no realistic possibility to do better in litigation; and (3) there was a high probability that the husband in litigation would do much worse. In litigation, it was probable that the $200 per month child support figure would increase to the much higher guidelines level; that fifty percent of the marital share of the husband's pension and retirement plans would be placed at risk; and that the permanent alimony claim was unlikely to succeed. The trial court concluded that the majority of the time spent on litigation in this case was baseless. We conclude that this determination is supported by competent substantial evidence.
Id. at 957.
The Third District acknowledged "that section 61.16, Florida Statutes, is not intended to operate as an offer-of-judgment statute. Thus, the fact that the husband obtained a bad result in litigation does not, in and of itself, warrant an assessment *231 of attorney's fees against him." Id. (citing Aue v. Aue, 685 So.2d 1388 (Fla. 1st DCA 1997)). However, the Third District concluded that the award was based on the trial court's analysis of the "issues in the case as they should have reasonably appeared at the outset." Id. The Third District upheld the award of attorneys' fees against the former husband's counsel, holding that courts have the inherent authority to assess attorneys' fees against counsel for litigating in bad faith. See id. at 958.
This Court recently recognized in Moakley v. Smallwood, 826 So.2d 221 (Fla. 2002), that trial courts have the inherent authority to impose monetary sanctions against counsel under limited circumstances. Further, we held that:
In exercising this inherent authority, an appropriate balance must be struck between condemning as unprofessional or unethical litigation tactics undertaken solely for bad faith purposes, while ensuring that attorneys will not be deterred from pursuing lawful claims, issues, or defenses on behalf of their clients or from their obligation as an advocate to zealously assert the clients' interests. The inherent authority of the trial court, like the power of contempt, carries with it the obligation of restrained use and due process.
Accordingly, we conclude that the trial court's exercise of the inherent authority to assess attorneys' fees against an attorney must be based upon an express finding of bad faith conduct and must be supported by detailed factual findings describing the specific acts of bad faith conduct that resulted in the unnecessary incurrence of attorneys' fees. Thus, a finding of bad faith conduct must be predicated on a high degree of specificity in the factual findings. In addition, the amount of the award of attorneys' fees must be directly related to the attorneys' fees and costs that the opposing party has incurred as a result of the specific bad faith conduct of the attorney. Moreover, such a sanction is appropriate only after notice and an opportunity to be heardincluding the opportunity to present witnesses and other evidence.
(Op. at 226-27) (footnote omitted).
In this dissolution case, the trial court did not make specific findings detailing the actions and conduct of counsel that were taken in bad faith. Our review of the record reveals that at the initial hearing, where the trial court assessed attorneys' fees, the trial court failed to make a finding that any particular action taken by the husband's counsel was taken in bad faith. In fact, the trial court stated: "I don't know whether the husband got bad advise [sic] or whether the husband got advise [sic] and didn't want to follow it."
Moreover, the trial court concluded: "I'm going to award the wife some attorney's fees.... I'm considering awarding part of these fees against counsel because I think the litigation was totally uncalled for and totally unnecessary, and I don't know who exactly was responsible for carrying it on to this extreme.... I am just utterly appalled and very upset at what has happened in this litigation.... [I]t is what gives attorneys a bad name."
When counsel learned that attorneys' fees had been assessed against him personally, he moved for rehearing. At the rehearing, the trial judge reiterated her concern that the first offer by the wife was very advantageous and opined that "there is no way that anyone with a knowledge of family law could not have figured out that he couldn't do better accepting the settlement." The trial judge continued: "I *232 don't know who was responsible for this. I don't know if it was the lawyer who didn't advise the client fully. I don't know whether it was the client who didn't want to accept the advice that he was given. I don't know whether it was a combination of the two factors."
At the hearing on attorneys' fees, the former husband testified that he did not seek the help of counsel until after the former husband had filed suit for divorce in November 1994. Therefore, counsel could not have had any input in the rejection of the original offer for settlement of the marital estate. Furthermore, although the basis for the imposition of fees against counsel appears to be the trial judge's view that the former husband should have accepted the former wife's original offer, counsel explained at the hearing that it was impossible to achieve a fair settlement without having complete disclosure of the former wife's assets. In fact, the former husband's co-counsel testified at the hearing that although good-faith settlement discussions continued during the proceedings, the original offer from the former wife was no longer "on the table."
Although the trial court felt that the case should have been settled because it was a "long shot," the trial court did not conclude that counsel engaged in bad faith conduct during the litigation. Pursuit of "long shot" claims cannot form the basis for assessing attorneys' fees against an attorney under the inherent authority doctrine. Furthermore, an attorney's failure to force his or her client to settle a colorable claim does not amount to "bad faith" justifying the imposition of attorneys' fees against the attorney.
We share the frustration of the trial court and the appellate court that, all too often, dissolution litigation is unnecessarily protracted, where a reasonable settlement at the outset would minimize the dissipation of assets and the emotional drain on the parties and their families.[1]See, e.g., Mettler v. Mettler, 569 So.2d 496, 498 (Fla. 4th DCA 1990). However tempting it would be to employ the inherent authority of the courts as a sword in dissolution cases to promote the laudable goal of reducing the amount and intensity of adversarial litigation that can result in dissipation of the parties' assets and that can have a destructive effect on the parties' emotional well-being, we cannot permit the inherent authority of the trial court to become a means to this end in this case.
Because in this case there was only a general finding of bad faith conduct on the part of counsel and because the record does not support a finding of specific acts of bad faith against counsel, we quash the Third District's decision affirming the award of attorneys' fees against the former husband's counsel.[2] Although in this opinion we have considered only the issue *233 of whether the trial court erred in assessing attorneys' fees against the former husband's counsel, the trial court's order in this case imposed joint and several liability against both the attorney and the former husband for the fee award.[3] The trial judge's joint and several award, coupled with her statements that she could not determine whether the former husband, his counsel, or both were at fault, indicate that shared liability may have been the judge's intent. Accordingly, although we quash the portion of the opinion awarding attorneys' fees against counsel, we remand for reconsideration of the fee award against the former husband in light of the effect our decision discharging counsel from any liability for the joint and several award may have.
It is so ordered.
SHAW, HARDING, ANSTEAD, LEWIS, and QUINCE, JJ., concur.
WELLS, C.J., concurs in result only.
NOTES
[1] As to the appropriate bounds of an attorney's advocacy in a family law case, we cite with approval from the publication by the American Academy of Matrimonial Lawyers, Bounds of Advocacy: Goals For Family Lawyers (2000), specifically section 1.3: "An attorney should refuse to assist in vindictive conduct and should strive to lower the emotional level of a family dispute by treating all other participants with respect"; and section 1.5: "An attorney should attempt to resolve matrimonial disputes by agreement and should consider alternative means of achieving resolution." p. 7-8. These goals also recognize that there is "substantial evidence of the destructive effect of divorce conflict on the children." Id. at 9 n. 13.
[2] We decline to address the merits of the award of fees against the former husband because it is not the basis for this Court's conflict jurisdiction. See Florida Power & Light Co. v. City of Dania, 761 So.2d 1089, 1094 n. 11 (Fla.2000); Heidbreder v. State, 613 So.2d 1322, 1323 (Fla.1993).
[3] We note that neither the trial court nor the Third District based its award of attorneys' fees against Haber on section 57.105, Florida Statutes (1997), which allows for attorneys' fees against an attorney and a client in equal shares for bringing a complaint or defense raising a "complete absence of a justiciable issue of either law or fact." § 57.105, Fla. Stat. (1997). Therefore, we express no opinion as to whether the award of attorneys' fees would have been proper under this statute. Further, the assessment of attorneys' fees in this case preceded the enactment of the amendments to section 57.105, Florida Statutes, which became effective in October 1999. Thus, neither party argues the applicability of the amended version of section 57.105, which is broader then the version existing at the time attorneys' fees were assessed in this case. See § 57.105, Fla. Stat. (2001).