900 So.2d 737 (2005)
Mary Janette LEVY, n/k/a Mary Janette Zimmerman, Appellant,
v.
Leslie V. LEVY, Appellee.
Nos. 2D03-2903, 2D04-548.
District Court of Appeal of Florida, Second District.
April 29, 2005.
*740 Karol K. Williams of Karol K. Williams, P.A., Tampa, for Appellant.
Jane H. Grossman of Law Office of Jane H. Grossman, St. Petersburg, for Appellee.
WALLACE, Judge.
Mary Janette Zimmerman, formerly known as Mary Janette Levy (the Wife), seeks review of the financial provisions of the final judgment that dissolved her short-term marriage to Leslie V. Levy (the Husband). The Wife also challenges the trial court's order that denied her timely motion for an award of attorney's fees and costs payable by the Husband. There is no cross-appeal. We reverse the final judgment in part and remand for further proceedings on the question of permanent periodic alimony in favor of the Wife and for the adjustment of the scheme of equitable distribution. We also reverse the order on fees and costs and remand for the entry of an award of attorney's fees and costs in favor of the Wife consistent with the Wife's need and the Husband's ability to pay. In addition, we hold that the trial court was not authorized to enter a substantive amendment to the final judgment more than ten days after the entry of the final judgment and after its denial of the Wife's motion for rehearing, and we vacate the amendment. We affirm the final judgment in all other respects.

The Facts
The parties met in 1997. They began living together in 1999, and they were married in January 2000. The parties initially lived in Mississippi. The Husband and the Wife are both college graduates. The Husband was employed as a district sales manager for Georgia-Pacific Corporation. The Wife worked in the human resources department of a bank where she earned $42,000 per year. Although the parties did not have any children, the Husband has a son by a prior marriage for whom he pays $1110 per month as child support.
During Memorial Day Weekend 2000, the Wife experienced severe back pain after lifting an ice chest into a truck. In August 2000, she was diagnosed with spondylolysis,[1] spondylolisthesis,[2] and a nerve damage disorder. These conditions caused the Wife to suffer from severe, chronic pain. As a result, the Wife resigned her position at the bank on the recommendation of her physician. The Wife subsequently *741 underwent two major surgeries to repair the damage to her back, but these surgeries were largely unsuccessful. The Wife subsequently developed pseudoarthrosis[3] in her back and degenerative disk disease secondary to her spondylolysis and spondylolisthesis. The Wife's physicians offered her a third surgery as one of the options available to her to address her severe back problems, but the Wife had not had the third surgery at the time of the final hearing. In April 2001, the Wife was hospitalized and diagnosed with ulcerative colitis.[4]
Because of her back and bowel ailments, the Wife became disabled and was unable to undertake even part-time employment. In November 2002, the Social Security Administration ruled that the Wife was totally disabled as to employment. The Social Security Administration awarded the Wife disability benefits of $1219 per month. After a mandatory deduction of $59 for Medicare insurance, the Wife receives a net disability check of $1160 monthly.
In August 2001, the parties relocated from Mississippi to Florida because of the Husband's job transfer. In December 2001, they purchased a home in Tampa. The Wife filed the petition for dissolution of marriage on June 5, 2002, and the parties separated approximately three months later. Thus the marriage lasted only two years and four months.
At the time of the final hearing in May 2003, the Husband was in good health. He was earning a base salary of approximately $8000 per month. Georgia-Pacific provided the Husband with a company car for his use and various other fringe benefits. The Husband also consistently received quarterly bonuses. These performance-based bonuses varied in amount. For the year 2001, the Husband's federal income tax return reflected a total gross income of $125,285.
On the other hand, the Wife's physical condition had not improved at the time of the final hearing, and she remained unemployed. However, the Husband testified that the restrictions on the Wife's activities were not as extensive as she claimed. He also presented the testimony of a private investigator who had made a surveillance tape of the Wife as she dragged empty garbage cans from the curb to the house, drove her automobile around Tampa, and exercised at a local YMCA to strengthen her back in accordance with her doctor's instructions. Nevertheless, the Husband did not present any testimony from a physician, vocational counselor, rehabilitation therapist, or other expert witness that the Wife was capable of being employed in any capacity. The trial court made no finding that the Wife was capable of working and did not impute any income to her.
The Wife's basic needs for living and medical expenses substantially exceeded the $1160 disability payment she received from social security. Pursuant to an order for temporary support, the Wife resided in the marital home during the pendency of the dissolution proceedings, and the Husband paid the mortgage payment and basic household expenses. The Husband also paid the Wife $1000 per month in temporary *742 alimony until the Wife began to receive her monthly disability check. On appeal, the Wife claims that she needs a minimum permanent alimony award of $3000 monthly, net of taxes, to meet her basic support and other needs.

The Final Judgment
In the final judgment, the trial court denied the Wife's claim for permanent alimony. The trial court instead awarded the Wife "bridge the gap" alimony of $1000 per month for twelve months. The parties settled most of the equitable distribution issues in a pretrial stipulation. The Husband received the marital home as part of his equitable distribution, but the home was subject to a substantial mortgage that he was required to pay. The Husband retained approximately $92,000 in nonmarital assets. The Wife received an eleven-year-old car, miscellaneous personal property, and an equalization payment of approximately $16,000 from the Husband. The Wife's nonmarital assets were negligible. In a subsequent order on fees and costs, the trial court declined to award the Wife any portion of her attorney's fees and costs from the Husband, finding that the "Wife's litigation conduct was spurious." The Wife timely appealed the final judgment and the order on fees and costs.

Permanent Periodic Alimony
The Wife's claim for permanent alimony was the major contested issue at the trial of this case. In the final judgment, the trial court concluded that the Wife was not entitled to an award of permanent periodic alimony based on three rationales: (1) the Wife's relative youth at age 32; (2) the Wife's entitlement to social security disability benefits in the net amount of $1160 per month; and (3) the absence of any evidence that the Husband contributed to the Wife's disabilities.
An award of permanent alimony is generally inappropriate in a short-term marriage. Cullen v. Cullen, 884 So.2d 304, 305 (Fla. 2d DCA 2004); Gallinar v. Gallinar, 763 So.2d 447, 449 (Fla. 3d DCA 2000); Segall v. Segall, 708 So.2d 983, 987 (Fla. 4th DCA 1998). However, the short duration of the marriage does not preclude such an award. Cullen, 884 So.2d at 305; Volosin v. Volosin, 382 So.2d 733, 735-36 (Fla. 2d DCA 1980); Echols v. Elswick, 638 So.2d 581, 582 (Fla. 1st DCA 1994). In considering the propriety of an award of permanent alimony in a short-term marriage, the pertinent inquiry is whether there would be "any genuine inequity created by the dissolution of the marriage without permanent alimony." Kremer v. Kremer, 595 So.2d 214, 215 (Fla. 2d DCA 1992) (citing Geddes v. Geddes, 530 So.2d 1011 (Fla. 4th DCA 1988)); see also Green v. Green, 672 So.2d 49, 51 (Fla. 4th DCA 1996); Cornell v. Smith, 616 So.2d 629, 630 (Fla. 4th DCA 1993). Or, to define the problem further, the question is whether the spouse requesting permanent alimony is "without the means of self[-]support, as a result of anything that has transpired during the marriage." Kremer, 595 So.2d at 216 (quoting Spencer v. Spencer, 590 So.2d 553, 554 (Fla. 1st DCA 1991)); see also Reeves v. Reeves, 821 So.2d 333, 334-35 (Fla. 5th DCA 2002); Wright v. Wright, 613 So.2d 1330, 1333 (Fla. 4th DCA 1992).
The short-term marriage cases in which awards of permanent alimony have been deemed appropriate have generally involved requesting spouses who were incapable of self-support by reason of a physical or mental disability. See, e.g., Cullen, 884 So.2d at 305 (reversing denial of permanent alimony when the wife suffered from breast cancer and other physical maladies); Simzer v. Simzer, 514 So.2d 372 (Fla. 2d DCA 1987) (affirming award of permanent alimony when the wife was nonfunctional as a result of depressive neurosis of severe magnitude); Volosin, *743 382 So.2d at 736 (remanding for an award of permanent alimony when the wife was in questionable health); Lagstrom v. Lagstrom, 662 So.2d 756 (Fla. 4th DCA 1995) (affirming award of permanent alimony when the wife suffered from depressive state which rendered her nonfunctional). However, spouses leaving short-term marriages have also received awards of permanent alimony for reasons unrelated to their health. See Reeves, 821 So.2d at 335 (holding that the wife was entitled to receive permanent alimony because she was required to stay home to care for parties' severely disabled child); Driscoll v. Driscoll, 547 So.2d 1247 (Fla. 4th DCA 1989) (remanding for an award of permanent alimony because the marriage had resulted in wife's loss of alimony payments from her previous marriage). An award of permanent alimony is not appropriate in a short-term marriage solely to enable the requesting spouse to maintain the marital lifestyle, Kremer, 595 So.2d at 215; Green, 672 So.2d at 51; Cornell, 616 So.2d at 630, or to punish the payor spouse for reprehensible conduct, Siegel v. Siegel, 564 So.2d 226, 228 (Fla. 5th DCA 1990). With these basic principles in mind, we turn now to an examination of the three rationales that the trial court relied on in reaching its decision to deny the Wife's claim for permanent alimony.
The Wife's relative youth was the first reason cited by the trial court. At the time of the final hearing, the Wife was only 32. The age of each party is one of the statutory factors that must be considered as supporting an award or a denial of alimony. § 61.08(2)(c), Fla. Stat. (2002). Generally speaking, the youth of the requesting spouse militates against an award of permanent alimony. See Zeigler v. Zeigler, 635 So.2d 50, 52 (Fla. 1st DCA 1994). However, the relative youth of the requesting spouse is not a bar to the award of permanent alimony if the requesting spouse lacks the capacity for self-support. See Kesling v. Kesling, 661 So.2d 919, 920 (Fla. 2d DCA 1995); Zeigler, 635 So.2d at 54; Ghen v. Ghen, 575 So.2d 1342, 1344 (Fla. 4th DCA 1991).
Although most of the short-term marriage cases in which awards of permanent alimony have been deemed appropriate involve requesting spouses who were at or near retirement age, permanent alimony awards to younger spouses have also been approved. The requesting spouses in Lagstrom, 662 So.2d 756, and Gallinar, 763 So.2d 447, were 48 and 38 respectively; the requesting spouse in Reeves, 821 So.2d 333, was only 32, the same age as the Wife. If the Wife lacked the capacity for self-support, her relative youth was not a sufficient reason to support the trial court's decision to deny her claim for permanent alimony.
The second rationale relied on by the trial court for its decision was the Wife's entitlement to social security disability benefits in the net amount of $1160 per month. For purposes of determining entitlement to alimony generally, a spouse is not considered self-supporting just because he or she has an income. See Morrill v. Morrill, 578 So.2d 53, 54 (Fla. 2d DCA 1991); Blakistone v. Blakistone, 462 So.2d 883, 884 (Fla. 2d DCA 1985); Young v. Young, 677 So.2d 1301, 1306 (Fla. 5th DCA 1996); Wolff v. Wolff, 576 So.2d 852, 853 (Fla. 1st DCA 1991). In several of the short-term marriage cases reversing the denial of permanent alimony, the requesting spouse had a small income. In the Cullen case, this court's most recent decision on the subject, the opinion noted that the requesting spouse had some earnings but did not state the amount. 884 So.2d at 305. In the Driscoll case, decided more than fifteen years ago, the requesting spouse had a net income of $8000 per year. *744 547 So.2d at 1248. In Echols, a ten-year-old decision, the requesting spouse had a monthly income of $660. 638 So.2d at 581. The requesting spouse in Reeves had the ability to earn $10,000 per year through part-time work as a real estate appraiser. 821 So.2d at 334. Because it was undisputed that the Wife required additional income to meet her basic needs, her entitlement to a small monthly benefit was not a sufficient reason to deny her claim for permanent alimony.
The third rationale relied on by the trial court in support of its decision was the absence of any evidence that the Husband had contributed to the Wife's disability. This rationale is unexpected in the context of the dissolution proceedings in the trial court. The Wife did not contend there that the Husband had contributed to the medical conditions that caused her disability, and his responsibility or lack of it was not an issue at the final hearing.
The trial court cited this court's decision in the Simzer case in support of its fault-based rationale. 514 So.2d 372. It is true that our opinion in Simzer noted the reliance by the lower court in that case on the payor spouse's role in causing the requesting spouse's disability that had made her unable to function. Nevertheless, the payor spouse's misconduct was not the basis for this court's affirmance of the lower court's award of permanent alimony to the disabled spouse. This court affirmed the lower court's alimony award in Simzer based on the presence of substantial medical evidence in the record that the wife in that case was "nonfunctional" and on "substantial competent evidence of the wife's need for support and the husband's ability to meet that need." Id. at 373-74. The decision in Simzer does not support the notion that a party to a short-term marriage cannot be required to pay permanent alimony in the absence of some contribution to the circumstances that have deprived the other party of the capacity for self-support. Indeed, the Florida courts have found permanent alimony appropriate in short-term marriage cases where the requesting spouse was disabled as a result of physical or mental ailments for which the payor spouse had no responsibility. See Cullen, 884 So.2d at 305 (wife had breast cancer and other unspecified physical maladies); Gallinar, 763 So.2d at 449 (wife suffered from psychiatric condition which predated the parties' marriage and recurred upon the birth of the parties' child). Thus the absence of conduct by the Husband that contributed to the Wife's disability is irrelevant to the analysis of whether an award of permanent alimony is appropriate in this case.
The trial court used an incorrect legal standard in reaching its decision to deny the Wife's claim for permanent alimony. In addition, except as mentioned in the three rationales reviewed above, the trial court failed to make specific findings concerning the various factors listed in section 61.08(2). Therefore, we reverse this aspect of the final judgment, and we remand this case with directions for the trial court to reconsider the evidence presented at the final hearing and revisit the question of the Wife's entitlement to permanent alimony. As noted, the pertinent inquiry when applying the factors of section 61.08(2) to the parties' short-term marriage is whether there would be any genuine inequity created by the dissolution of the marriage without permanent alimony, or, to define the inquiry further, whether the Wife is without the means of self-support as a result of anything that has transpired during the marriage. Because more than twenty-two months have elapsed since the final hearing, if the trial court finds that the Wife is entitled to permanent alimony, the trial court shall *745 conduct an evidentiary hearing limited to the issue of the amount of the permanent alimony award consistent with the Wife's need and the Husband's ability to pay. At such hearing, the parties shall have an opportunity to present additional evidence based on conditions as may then exist. If permanent alimony is awarded, the trial court shall make the permanent alimony award retroactive to June 1, 2003, but the Husband shall receive a credit against such award for the amount of all "bridge the gap" alimony payments received by the Wife. In any event, the trial court shall make specific findings of fact concerning each of the factors outlined in section 61.08(2) in order to facilitate appellate review of the ruling on permanent alimony.

Life Insurance
The Wife argues that the trial court should be instructed on remand to order the Husband to obtain a policy of life insurance to secure payment of any alimony that may be awarded to her. Trial courts may require that alimony awards be secured by life insurance on the life of the payor spouse. § 61.08(3); Sobelman v. Sobelman, 541 So.2d 1153 (Fla.1989); O'Connor v. O'Connor, 782 So.2d 502, 505 (Fla. 2d DCA 2001). However, there must be special circumstances that demonstrate a need for such a requirement. See Solomon v. Solomon, 861 So.2d 1218, 1221 (Fla. 2d DCA 2003); Cozier v. Cozier, 819 So.2d 834, 837 (Fla. 2d DCA 2002); but see Layeni v. Layeni, 843 So.2d 295, 300 n. 2 (Fla. 5th DCA 2003). In addition, in order to justify such a requirement, "the record should contain evidence of the payor's insurability, the cost of the proposed insurance, and the payor's ability to afford the insurance." Lopez v. Lopez, 780 So.2d 164, 165 (Fla. 2d DCA 2001); see also Cozier, 819 So.2d at 837.
In this case, the Wife did not present any evidence in the trial court concerning either the Husband's insurability or the cost of the proposed insurance. Accordingly, we decline to instruct the trial court on remand to require the Husband to maintain life insurance to secure the payment of any permanent periodic alimony award that it may make.

The Amendment to the Final Judgment
The final judgment of dissolution was filed with the clerk of the circuit court on May 28, 2003. The Wife filed a motion for rehearing and an amended motion for rehearing. The trial court denied the motion for rehearing on June 16, 2003, and the amended motion for rehearing on June 17, 2003. Six days later, on its own initiative, the trial court filed an amendment to the final judgment of dissolution of marriage on June 23, 2003. The amendment included additional findings of fact and altered the plan of equitable distribution.
Trial courts have no authority to alter, modify, or vacate a final judgment except as provided in Florida Rules of Civil Procedure 1.530 and 1.540. Shelby Mut. Ins. Co. v. Pearson, 236 So.2d 1, 3 (Fla.1970). Florida Rule of Civil Procedure 1.530(d) provides:
Not later than 10 days after entry of judgment or within the time of ruling on a timely motion for a rehearing or a new trial made by a party, the court of its own initiative may order a rehearing or a new trial for any reason for which it might have granted a rehearing or a new trial on motion of a party.
The trial court entered the amendment more than ten days after entry of the final judgment and after its denial of the motion for rehearing. Pursuant to rule 1.530(d), the trial court lacked jurisdiction to amend the final judgment once it denied the motion for rehearing. Shelby Mut., 236 So.2d at 4. In the Shelby Mutual case, the supreme court "rejected the argument that the trial court has jurisdiction to correct *746 its own judgments at any time." King v. State, 870 So.2d 69, 70 (Fla. 2d DCA 2003).
The Husband argues that the trial court was authorized to enter the amendment as the correction of a clerical error pursuant to rule 1.540(a). In Bolton v. Bolton, 787 So.2d 237 (Fla. 2d DCA 2001), this court had occasion to address a similar argument. In that case, we said:
A trial court may correct a clerical error "at any time on its own initiative" pursuant to Florida Rule of Civil Procedure 1.540(a), but judicial errors, which include errors that affect the substance of a judgment, must be corrected within ten days after entry of judgment pursuant to Florida Rule of Civil Procedure 1.530, or by appellate review.
Id. at 238-39 (citations omitted); see also Clearwater Bonding Agency v. Pinellas County, 805 So.2d 901, 902 (Fla. 2d DCA 2001). In this case, the amendment under review added new findings of fact and altered the plan of equitable distribution. These were substantive changes to the final judgment, not the correction of clerical mistakes or a scrivener's error. Thus the amendment was unauthorized under rule 1.540(a). See Padot v. Padot, 891 So.2d 1079 (Fla. 2d DCA 2004); Malone v. Percival, 875 So.2d 1286 (Fla. 2d DCA 2004). Therefore, we vacate the amendment to final judgment of dissolution of marriage.

Equitable Distribution
During the pendency of the dissolution proceedings, the Wife received a lump-sum disability payment from Social Security in the approximate amount of $27,000. The Wife testified without contradiction at the final hearing that she then had only $1500 of the lump-sum payment remaining. The Wife explained that she had paid $5300 in fees to the attorney who handled her Social Security disability claim and an unspecified amount for fees and costs to her trial counsel from the lump-sum award. The Wife testified that she had spent the balance of the awardless the remaining $1500on living expenses such as uninsured medical bills, copayments to physicians, medications, premiums on a personal life insurance policy, property insurance, telephone bills, meals, entertainment, and the like.
The trial court did not make a finding of fact in the final judgment that the Wife was guilty of misconduct with regard to the depletion or dissipation of the portion of the lump-sum payment that had been spent. Nevertheless, the trial court assigned the full value of the $27,000 payment to the Wife in the plan of equitable distribution contained in the final judgment. Since the Wife's testimony that she had used most of this asset for attorney's fees and living expenses was unrebutted and the trial court made no finding of misconduct with respect to the Wife's use of the funds, it was error to assign the full value of the depleted asset to the Wife as part of the plan of equitable distribution. See Cooper v. Cooper, 639 So.2d 153, 155 (Fla. 2d DCA 1994); Karimi v. Karimi, 867 So.2d 471, 475 (Fla. 5th DCA 2004); Bush v. Bush, 824 So.2d 293, 294 (Fla. 4th DCA 2002); Knecht v. Knecht, 629 So.2d 883, 886 (Fla. 3d DCA 1993).
The final judgment also misclassified the marital portion of the Husband's Alliance Roth IRA, with a value of $1050.38, as the nonmarital portion of that asset. The actual value of the nonmarital portion of the Alliance Roth IRA was $1924.49. The final judgment also failed to distribute the marital portion of this asset. In addition, the final judgment misidentifies the value of the Husband's nonmarital contents and personalty within the marital home as $21,000. The actual value of the property was $21,815. The final judgment also fails *747 to list the Husband's nonmarital jewelry with a value of $500.
We reverse these aspects of the final judgment. On remand, the trial court shall revisit the equitable distribution of the marital and nonmarital assets in order to correct these matters.

Attorney's Fees
The final judgment contains the following provision concerning attorney's fees, costs, and suit money:
The Court finds there is a need for and an ability to pay some portion of the Wife's attorney['s] fees, costs, and suit money. The Court reserves jurisdiction to determine the reasonable number of hours and hourly rate of Wife's attorney's fees and costs which Wife needs to have paid by the Husband.
Thus the trial court initially determined that the Wife had a need forand the Husband had the ability to payat least some portion of the Wife's attorney's fees and costs.
At the posttrial hearing on attorney's fees and costs, the Wife requested fees in the amount of $41,579 for her trial counsel and $4496 in costs. The Wife also requested fees for her appellate counsel in the amount of $5728 for services in connection with various postjudgment matters in the trial court. The trial court's order on fees and costs only noted the total fees and costs requested by each of the Wife's attorneys, their respective hourly rates, and the number of hours each attorney had testified to devoting to services on the Wife's behalf. The trial court did not determine the amount of a reasonable fee for either of the Wife's attorneys by considering appropriate hourly rates, the number of hours reasonably expended on the case, and the other factors outlined in Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla.1985).
The trial court evidently omitted an analysis of the Rowe factors from the order on fees and costs because it had determined to deny the Wife any award of fees and costs from the Husband. The trial court based its refusal to award any fees and costs to the Wife on its ruling that "the Former Wife's litigation conduct was spurious, caused excessive amounts of discovery, additional work for the Former Husband's attorney, delays to the Court and unnecessarily increased fees." Citing the landmark decision of Rosen v. Rosen, 696 So.2d 697 (Fla.1997), the trial court concluded that it would be "very inequitable to require the Former Husband to pay for the over zealous litigation tactics of the Former Wife."
The primary reason the trial court offered in support of its conclusion that the Wife's litigation conduct qualified as "spurious" under Rosen, 696 So.2d 697, was her refusal to accept any of the Husband's offers of settlement. The Husband had made three settlement offers prior to trial. These offers generally proposed payment of either "bridge the gap" alimony or lump-sum alimony and an equal division of marital assets. The Husband's initial offer proposed payment of the same amount of "bridge the gap" alimony as the trial court ultimately awarded in the final judgment. The latter two offers were more favorable to the Wife than the provisions of the final judgment. Although the Wife declined each of the Husband's offers, she submitted counteroffers of her own that the Husband refused to accept. The parties were unable to reach an agreement at mediation, and the case proceeded to final hearing.
Attorney's fees and costs may be awarded in proceedings for dissolution of marriage pursuant to section 61.16. "The purpose of this section is to ensure that both parties will have a similar ability *748 to obtain competent legal counsel." Rosen, 696 So.2d at 699. "[I]t is not necessary that one spouse be completely unable to pay attorney's fees for the trial court to require the other spouse to pay those fees." Id. "[T]o ensure that both parties have similar access to competent legal counsel, the trial court must look to each spouse's need for suit money versus each spouse's respective ability to pay." Id.
Although the financial resources of the parties are the primary factor to be considered under the statutory scheme, the trial court may consider other relevant factors such as:
[T]he scope and history of the litigation; the duration of the litigation; the merits of the respective positions; whether the litigation is brought or maintained primarily to harass (or whether a defense is raised mainly to frustrate or stall); and the existence and course of prior or pending litigation....
... [A] court may consider all the circumstances surrounding the suit in awarding fees under section 61.16. Moreover, in situations where a court finds that an action is frivolous or spurious or was brought primarily to harass the adverse party, ... the trial court has the discretion to deny a request for attorney's fees to the party bringing the suit.
Id. at 700-01. In considering the application of Rosen, it is important to bear in mind that the supreme court's discussion of these secondary factors unrelated to the financial resources of the parties was presented "in the context of a dispute which had been continuously litigated for nearly 18 years and produced six separate appeals." Elliott v. Elliott, 867 So.2d 1198, 1201 (Fla. 5th DCA 2004).
Although trial courts have the authority pursuant to section 61.16 to deny fees for various forms of litigation misconduct in proceedings for dissolution of marriage, "there is no authority for denying attorney's fees in dissolution cases solely for the failure to accept an offer of settlement." Aue v. Aue, 685 So.2d 1388, 1388 (Fla. 1st DCA 1997); cf. Diaz v. Diaz, 727 So.2d 954 (Fla. 3d DCA 1998) (approving denial of award of fees to husband who rejected a very generous settlement offer from the wife, made no counterproposal, and embarked on an expensive and wasteful litigation strategy), quashed in part on other grounds, 826 So.2d 229 (Fla.2002). In fact, the statute concerning offers of judgment, section 768.79, Florida Statutes (2002), is limited by its own terms to civil actions for damages and has no counterpart in proceedings for dissolution of marriage. Even if we were not reversing the trial court's denial of an award of permanent periodic alimony to the Wife, her claim for such an award under the unusual facts in this short-term marriage case had substantial support in the existing case law at the time of trial. Therefore, the Wife's refusal to accept any of the Husband's settlement offers provides no evidentiary support for the trial court's conclusion that the Wife's litigation conduct was "spurious."
We have considered each of the other reasons cited by the trial court in support of its finding that the Wife engaged in litigation misconduct. A thorough review of the lengthy record in this case reveals that each of these additional reasons is either unsupported by competent, substantial evidence or does not constitute improper litigation conduct by the Wife or her counsel.
In fact, our review of the record discloses that the course of the litigation in the trial court was essentially routine. The Wife promptly complied with her financial disclosure obligations. The Husband did not file any motions to compel or *749 seek other enforcement proceedings against the Wife. The trial court was never called upon to consider the imposition of sanctions against the Wife or her counsel. The Wife did not seek review of any of the trial court's nonfinal orders. Except for a petition for an injunction against domestic violence brought by the Wife against the Husband, there was no collateral litigation in the trial court. The final judgment was entered within less than one year of the filing of the petition. Thus the dissolution proceeding moved with reasonable speed to its conclusion.
Indeed, to the extent that there were difficulties in the proceedings in the trial court, the Husband bears a substantial portion of the responsibility for them. He failed to make a complete disclosure of his financial information early in the case, requiring additional work by the Wife's trial counsel. The Husband filed a total of seven different financial affidavits over the course of the dissolution proceedings. The Husband's fifth financial affidavit seems to have been reasonably complete. After the Wife's trial counsel had all of the Husband's financial information in hand, the parties entered into a pretrial stipulation that resolved the majority of the equitable distribution issues in the case.
As a result of the parties' pretrial stipulation, the only issues remaining to be tried by the court were the Wife's claim for permanent periodic alimony and the few equitable distribution issues that had not been settled by agreement. It took two days to try the case. Most of the trial exhibits were admitted into evidence without objection. The only remarkable factor during the entire dissolution proceeding was the Wife's entirely appropriate presentation to the trial court of a relatively unusual issueher claim for permanent periodic alimony in a shortterm marriage. In short, the record in this case does not disclose any inequitable conduct or abuse of the system by the Wife that would justify a denialeither in whole or in partof an award of attorney's fees and costs to her on account of litigation misconduct. See Pietras v. Pietras, 842 So.2d 956, 962-63 (Fla. 4th DCA 2003) (reversing award of all of wife's attorney's fees and costs against husband for "litigious behavior" where parties stipulated to most matters in dispute, only a few issues were presented to the court, a large number of the positions advanced by the husband were meritorious, and the appellate court could not discern any additional work caused for the wife's attorney by the husband); Taylor v. Taylor, 746 So.2d 577 (Fla. 1st DCA 1999) (reversing an award of attorney's fees against former wife in child custody modification proceeding where there was no protracted litigation, the former wife had complied with literal terms of applicable custody decree, and facts in the record justified former wife's unsuccessful motion to dismiss on jurisdictional grounds); cf. Mettler v. Mettler, 569 So.2d 496 (Fla. 4th DCA 1990) (affirming award of attorney's fees to former husband where former wife had engaged in extensive, expensive, and needless litigation).
Although we hold that the Wife's litigation conduct in the trial court was not "spurious," it does not follow from our holding that the fees and costs the Wife requested for the services of her attorneys in the trial court are reasonable in amount. We do not address the matter of the reasonableness of the fees and costs requested because the trial court has not yet ruled on that issue. On remand, the trial court "must determine the proper amount of fees by considering the hourly rate, the number of hours reasonably expended in the case, and setting forth specific findings as to these factors as required by Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla.1985)." Beck v. Beck, *750 852 So.2d 934, 938 (Fla. 2d DCA 2003). After determining a reasonable fee, section 61.16 requires that the trial court consider the financial resources of the parties as the primary factor. Rosen, 696 So.2d at 700; Beck, 852 So.2d at 938. The trial court has already concluded in its final judgment that the Wife has a need forand the Husband has the ability to payat least some portion of the Wife's attorney's fees. Since we hold that the Wife did not engage in any litigation misconduct, the trial court on remand shall not limit an award of fees and costs to the Wife based on any of the secondary Rosen factors unrelated to the financial resources of the parties.
We reverse the order on fees and costs with directions that the trial court review the record and enter an award of attorney's fees in favor of the Wife based on the evidence that was presented at the hearing on the Wife's motions for fees and costs and the applicable law. If the trial court is unable to resolve the issues based on the record, then it may order another hearing.
We affirm the final judgment in all other respects.
Affirmed in part, reversed in part, amendment to final judgment of dissolution of marriage vacated, and remanded for further proceedings.
CASANUEVA and VILLANTI, JJ., Concur.
NOTES
[1] Spondylolysis is "[t]he disintegration or dissolution of a vertebra." 5 J.E. Schmidt, M.D., Attorneys' Dictionary of Medicine and Word Finder S-262 (Matthew Bender 2002).
[2] Spondylolisthesis is "[a] forward displacement or slipping of one of the bony segments of the spine (i.e., of a vertebra) over its fellow below, but usually the slipping of the fifth or last lumbar (loin) vertebra over the body of the sacrum." 5 Schmidt, supra note 1, at S-262.
[3] Pseudoarthrosis is "[a] fracture and bending of a long bone (usually the tibia) which gives the false appearance of a joint at the site of the fracture." 5 Schmidt, supra note 1, at P-501.
[4] Ulcerative colitis is "[a]n inflammation of the colon (the large bowel) characterized by ulceration of its lining membrane. It occurs chiefly in tense or nervous persons. The clinical symptoms are abdominal pain, diarrhea, and bleeding through the rectum." 6 J.E. Schmidt, M.D., Attorneys' Dictionary of Medicine and Word Finder U-3 (Matthew Bender 2002).